**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| JOSEPH M. BONILLA,<br><br>      *Plaintiff*,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>      *Defendant*. | Civil Action No.: 1:25-cv-3570<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff, Joseph Michael Bonilla ("Mr. Bonilla" or "Plaintiff"), by and through his undersigned attorneys, alleges the following against JPMorgan Chase Bank ("Chase" or "Defendant"):

## <u>PRELIMINARY STATEMENT</u>

1. Plaintiff is a victim of Unauthorized Transactions from his Chase account by unknown perpetrator(s).

2. On or about August 18, 2023, Plaintiff became aware of several fraudulent transfers (the "Unauthorized Transactions") from his bank account with Defendant (the "Account").

3. The amount transferred out of Plaintiff's Account totaled $15,590.00 (the "Stolen Funds").

4. Plaintiff promptly and repeatedly contacted Defendant regarding the disputed transaction(s) and provided supporting documentation, but to no avail.

5. Seeking recompense, Plaintiff initiated an Arbitration against Defendant with JAMS, but Defendant failed to pay the fees it was obligated to pay under its agreement with Plaintiff and the operative JAMS rules, so the matter was dismissed for non-payment.

6. To date, Defendant has failed to reimburse Plaintiff for the Stolen Funds.

7. Plaintiff brings claims against Defendant for violations of Electronic Fund

Transfer Act, 15 U.S.C. §§ 1693, *et seq.* (EFTA); Conversion; Nevada Deceptive Trade Practices Act, NRS § 598, *et seq.*; and Breach of Contract.

## JURISDICTION AND VENUE

7. The Court has jurisdiction pursuant to 15 U.S.C. § 1693m and 28 U.S.C. § 1331.

8. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

10. Jurisdiction over Plaintiff's claim for declaratory relief is conferred by 28 U.S.C. § 2201.

11. Venue is proper in this District because Defendant's principal place of business is located within this District, a substantial part of the events and occurrences underlying this litigation occurred within this District, and Defendant regularly conducts business here.

## PARTIES

12. Plaintiff Joseph Michael Bonilla is a natural person and citizen of Reno residing in Washoe County, Nevada.

13. Plaintiff is a "consumer" as defined by each of the relevant statutes.

14. At all times relevant, Plaintiff's Account with Defendant was used for personal, family, or household purposes.

15. Defendant JPMorgan Chase Bank, N.A. is a national banking association formed under the laws of the United States with its principal place of business in New York, New York.

16. Chase was, at all times relevant to this Complaint, a financial institution as defined by the EFTA, 15 U.S.C § 1693a(9).

2

**FACTUAL ALLEGATIONS**

15.　On or about August 18, 2023, Plaintiff learned his Account with Chase had been compromised and contained multiple Unauthorized Transactions.

16.　Most of the Unauthorized Transactions sent funds to an individual identified as "Daniel Olguin."

17.　Plaintiff does not know anyone named Daniel Olguin.

18.　Plaintiff initially disputed the Unauthorized Transactions through Zelle, an online financial services platform through which the Unauthorized Transactions had been made.

19.　However, Zelle directed Plaintiff to contact Chase for all disputes concerning the Unauthorized Transactions.

20.　On August 18, 2023, Plaintiff contacted Chase, spoke with a Chase customer representative, and disputed the Unauthorized Transactions.

21.　However, Chase conveyed to Plaintiff that it would not accept his disputes by telephone, and Chase told Plaintiff he was required to go to his local bank branch.

22.　In speaking with the Chase, Plaintiff requested to freeze any outgoing Zelle payments from his Account; however, Chase told Plaintiff that the only way for it to open a claim concerning his disputes and freeze his Account was also for him to go to a local bank branch.

23.　Shortly thereafter, Plaintiff went to his local Chase bank branch, but it had already closed.

24.　On or about August 21, 2023, Plaintiff again called Chase and disputed the Unauthorized Transactions.

25.　Chase again refused to accept his disputes and Chase again required Plaintiff to go his local branch before it would accept his disputes.

26.     On September 18, 2023, Plaintiff took a day of vacation from work on an emergency basis, went to his local bank branch and submitted written disputes Unauthorized Transactions (including a new unauthorized Zelle transaction that took place on or about September 15, 2023).

27.     At the bank branch Plaintiff spoke with a Chase customer representative who called a Zelle customer representative over the phone.

28.     The Zelle representative conveyed that Plaintiff's Zelle account would be deleted, and all the devices linked to his Account would be deactivated.

29.     Shortly after, with the assistance of the Chase customer representative, Plaintiff changed his Chase Account login information.

30.     By letter dated September 21, 2023, Defendant denied Plaintiff's disputes of the Unauthorized Transactions.

31.     On or about September 22, 2023, Plaintiff called Chase to inquire about the reason for the denial.

32.     Plaintiff was told there was no proof of fraud.

33.     Shortly thereafter, Plaintiff filed a complaint with the Consumer Financial Protection Bureau ("CFPB").

34.     By letter dated October 6, 2023, the Chase Executive Office replied to Plaintiff's CFPB complaint stating that its decision had not changed, saying, "We were not able to determine any fraud occurred. The device used to sign in to Chase.com as well as the service provider used are consistent with your history."

35.     Plaintiff immediately reviewed his Device Access History in Defendant's webpage where he discovered that an iPhone 14 Pro had been used during the time of the Unauthorized Transactions and deactivated on September 18, 2023.

36.     Plaintiff has not owned or used an iPhone mobile device in the last 8 years.

37.     On or about November 11, 2023, Plaintiff filed a police report with the Reno Police Department.

38.     On or about November 13, 2023, Plaintiff submitted to Chase a further written dispute with a statement of theft and a copy of the police report filed.

39.     To date, Defendant has not refunded Plaintiff for the Stolen Funds.

## **ARBITRATION**

40.     Under the Deposit Account Agreement and Privacy Notice, effective March 17, 2024 (the "DAA"), Chase and Plaintiff agreed that , "upon the election of either of us, any claims or disputes . . . will be resolved by binding arbitration . . . and not through litigation in any court . . . ."

41.     Under the DAA, "The party filing a Claim in arbitration must select JAMS or the American Arbitration Association ("AAA") as the arbitration administrator."

42.     With regard to payment of fees, the DAA provides:

> ***Unless the arbitration administrator waives your initial filing fee to commence arbitration, you are obligated to pay that fee*** but, if a settlement is reached between you and us prior to the hearing, we will reimburse you for up to $500 for filing fees as part of the negotiated terms of the settlement. If a settlement is not reached prior to the hearing, we will pay any fees of the arbitrator and arbitration administrator for the first two days of any hearing. If you are the prevailing party in the arbitration, we will reimburse you for any fees you paid to the arbitration organization and/or arbitrator. ***Except as provided above, all other fees will be allocated between you and us according to the arbitration administrator's rules and applicable law.***

43.     Under the JAMS Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses Minimum Standards of Procedural Fairness, effective May 1, 2024, "when a consumer initiates arbitration against the company, the only fee required to be paid by the consumer is $250, which is approximately equivalent to current court filing fees. All other costs must be borne by the

company, including any remaining JAMS Filing Fee, Case Management Fee and all professional fees for the arbitrator's services."

44.    Chase routinely relies on the DAA as a binding agreement with its customers and seeks to compel parties who do not voluntarily submit their disputes to arbitration. *See, e.g., Curtis v. JPMorgan Chase Bank, N.A.*, 2024 U.S. Dist. LEXIS 14684 (S.D.N.Y. Jan. 25, 2024) (compelling arbitration of unauthorized electronic transfer claims based, *inter alia*, on a DAA between Chase and its customers).

45.    On April 18, 2024, Plaintiff commenced an arbitration in JAMS against Chase asserting claims against Chase pursuant to the EFTA and common law conversion for its violations of law concerning the Unauthorized Transactions (the "Arbitration").

46.    Plaintiff paid all fees required by JAMS to commence the Arbitration as a consumer Claimant.

47.    On or about April 25, 2024, Chase received the Arbitration commencement papers.

48.    On June 12, 2024, JAMS issued a Notice to All Parties in which it found that the JAMS Policy on Consumer Arbitration Pursuant to Pre-Dispute Minimum Standards of Procedural Fairness applied to the Arbitration, the Minimum Standards applied notwithstanding any contrary provisions in the parties' pre-dispute arbitration agreement, and the parties' agreement to proceed with the Arbitration constituted agreement to abide by the Minimum Standards.

49.    Along with the Notice, JAMS issued an invoice to Chase dated June 12, 2025, for the non-refundable filing fee.

50.    Chase paid the non-refundable filing fee and fully initiated the Arbitration.

51.    Subsequently, on October 10, 2024, JAMS issued an invoice to Chase for retention of an arbitrator to serve in the Arbitration ("Retainer Invoice").

52.    The Retainer Invoice was due upon receipt.

53. However, Chase did not pay the Retainer Invoice.

54. On December 23, 2024, JAMS again requested that Chase pay the Retainer Invoice.

55. Chase did not reply to the December 2024 communication from JAMS, nor did it indicate it would not pay the Retainer Invoice.

56. On or about January 13, 2025, attorneys Anthony M. Diblasi and Jose A. Ortiz of Homer Bonner Jacobs appeared in JAMS as representatives for Chase in the Arbitration.

57. On January 17, January 31, February 14, and February 28, 2025, JAMS re-sent the Retainer Invoice to Mr. Diblasi and Mr. Ortiz.

58. Neither Mr. Diblasi, nor Mr. Ortiz, nor any other representative of Chase objected to the Retainer Invoice, disputed whether it was owed by Chase, or otherwise indicated Chase would not satisfy the Retainer Invoice.

59. On March 3, 2025, JAMS wrote to Mr. Diblasi requesting an update on the payment status for the Retainer Invoice.

60. Upon information and belief, Mr. Diblasi did not reply to JAMS.

61. On March 10, 2025, JAMS issued a Notice of Administrative Stay, noting it had not received the retainer fees necessary to proceed with the Arbitration from Chase.

62. On April 1, 2025, JAMS issued a Notice of Closing File, which terminated the Arbitration due to Chase's failure to pay the Retainer Invoice.

63. Through its actions and omissions, Chase misled Plaintiff as to the forums in which Plaintiff could seek relief for Chase's violations of law and the process and procedures to which Chase would adhere.

64. As a direct and proximate result of Defendant's conduct described herein, Plaintiff was deprived of an award of damages in the Arbitration, including recovery of his actual damages, treble damages, punitive damages, statutory damages, costs and reasonable attorneys' fees, and

must pay the costs and attorneys' fees incurred in prosecuting this action, each of which is a direct consequence of Defendant's failure to abide by the DAA and its actions and omissions in the Arbitration.

## CAUSES OF ACTION

### COUNT 1: Electronic Fund Transfer Act, 15 U.S.C. § 1693 *et seq.*

65.     Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

66.     Per the EFTA, Regulation E, and Regulation E's Official Interpretations, Defendants bear the responsibility for unauthorized transfers and withdrawals such as the ones in question.

67.     Except as provided in 15 U.S.C. § 1693g, a consumer incurs no liability from unauthorized electronic fund transfers.

68.     Pursuant to 15 U.S.C. § 1693g(a), "Unauthorized electronic fund transfers; limit" states in relevant part as follows:

> In no event. . . shall a consumer's liability for an unauthorized transfer exceed the lesser of-
>
> (1) $50; or
>
> (2) the amount of money or value of property or services obtained in such, unauthorized electronic fund transfer prior to the time the financial institution is notified of, or otherwise becomes aware of, circumstances which lead to the reasonable belief that an unauthorized electronic fund transfer involving the consumer's account has been or may be effected.

69.     Thus, the consumer's liability for unauthorized use is generally capped at a maximum of $50 for unauthorized transfers.

70. This cap is increased to $500 dollars where the consumer waits more than two business days after becoming aware of the unauthorized transaction to notify the financial institution. 15 U.S.C. § 1693g(a)(2).

71. The rules are elucidated in Regulation E, 12 C.F.R. § 1005.6(b):

(b) Limitations on amount of liability. A consumer's liability for an unauthorized electronic fund transfer or a series of related unauthorized transfers shall be determined as follows:

(1) Timely notice given. If the consumer notifies the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed the lesser of $50 or the amount of unauthorized transfers that occur before notice to the financial institution.

(2) Timely notice not given. If the consumer fails to notify the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed the lesser of $500 or the sum of:

(i) $50 or the amount of unauthorized transfers that occur within the two business days, whichever is less; and

(ii) The amount of unauthorized transfers that occur after the close of two business days and before notice to the institution, provided the institution establishes that these transfers would not have occurred had the consumer notified the institution within that two-day period.

72. In addition to the reimbursement obligation, the EFTA places an independent duty on financial institution to investigate unauthorized transfers pursuant to 15 U.S.C. § 1693f.

73. In any such investigation, as well as any other matter regarding liability for the unauthorized transfers, the EFTA places the burden of proof on the financial institution to demonstrate that challenged transfers were authorized.  15 U.S.C. § 1693g(b).

74. Defendant cannot meet its burden of proof here, where Plaintiff:

   a. Promptly disputed the transactions;

   b. Provided details regarding the theft;

9

    c.   Provided a police report;

    d.   Has no felony criminal history;

    e.   Has no history of filing false disputes; and

    f.   The thefts are inconsistent with Plaintiff's pattern of use.

75.    Denials based on a consumer's alleged negligence are expressly prohibited under the EFTA's implementing regulations. See Consumer Financial Protection Bureau, Comment for 1005.6 Liability of Consumer for Unauthorized Transfers, 6(b)(2) ("Negligence by the consumer cannot be used as the basis for imposing greater liability than is permissible under Regulation E. Thus, consumer behavior that may constitute negligence under state law, such as writing the PIN on a debit card or on a piece of paper kept with the card, does not affect the consumer's liability for unauthorized transfers.")

76.    Under the EFTA, consumers who are tricked into providing account access by a scammer posing as a bank employee are not liable for the transactions initiated by the scammer, which are unauthorized electronic fund transfers under § 1693a(12). *See, e.g.*, Official Interpretation of Regulation E, 12 C.F.R. § 1005.2(m)(3) ("Access device obtained through robbery or fraud. An unauthorized EFT includes a transfer initiated by a person who obtained the access device from the consumer through fraud or robbery.").

77.    Defendant has not reimbursed Plaintiff for the Stolen Funds consistent with the consumer liability cap set forth in the EFTA.

78.    Defendant did not conduct a good faith investigation regarding the Stolen Funds.

79.    Thus, Defendant's failure to reimburse Plaintiff is patently unlawful and in violation of Section § 1693g.

80.    Defendant's stated basis for denial is also invalid under the EFTA.

10

81.    Defendant did not have a reasonable basis for believing the account was not in error based on the evidence Plaintiff provided to Defendant.

82.    Specifically, Defendant's conduct as set forth herein constitutes a failure to investigate in good faith and a failure to establish a reasonable basis for believing that Plaintiff's account was not in error, and also constitutes a knowing and willful conclusion that Plaintiff's account was not in error when such conclusion could not reasonably have been drawn from the available evidence, and for this reason constitutes a violation of 1693f(e), entitling Plaintiff to treble damages in addition to all other relief sought herein.

83.    Defendant's stated basis for denial (or lack thereof) is an invalid basis under the EFTA to deny reimbursement of the Stolen Funds.

84.    Defendant also violated the EFTA by failing to provide any meaningful explanation of the grounds upon which it relied in denying Plaintiff's claim. 15 U.S.C. § 1693f(d).  *See* CFPB Supervisory Highlights, Issue 22, Summer 2020, Section 2.3.3 ("Financial institutions must go beyond just providing the findings to actually explain or give the reasons for or cause of those findings.").

85.    Defendant also violated the EFTA by failing to provide Plaintiff with notice of his right to request reproductions of all documents which Defendant relied on to conclude that an error did not occur, as required under 15 U.S.C. § 1693f(d).

86.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered actual damages, including but not limited to past and future monetary loss, past and future mental distress, emotional anguish, and other damages that will be presented to the trier of fact.

87.    As a direct and proximate result of Defendant's violations of the EFTA, Plaintiff is entitled to declaratory judgment, actual damages, statutory damages, treble damages, costs and reasonable attorneys' fees.

**COUNT 2: Electronic Fund Transfer Act, 15 U.S.C. § 1693 *et seq.***

88.     Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

89.     Plaintiff had a possessory right to the funds in the Account.

90.     Under the circumstances set forth herein, the funds constituted personal property.

91.     Defendant intentionally, and without authority, assumed and exercised control over Plaintiff's funds.

92.     Defendant's dominion over the funds and interference with the funds was in derogation of Plaintiff's rights, including but not limited to Plaintiff's right to have the funds returned on demand.

93.     As a result of Defendant's actions, Plaintiff's suffered actual damages, including but not limited to the amount of the funds converted.

**COUNT 3: Nevada Deceptive Trade Practices Act, NRS § 598 et seq.**

94.     Plaintiff realleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

95.     Defendant's conduct violated numerous provisions of the Nevada Deceptive Trade Practices Act.

96.     The Nevada Deceptive Trade Practices Act prohibits any false representation that is knowingly made in a transaction. NRS § 598.0915(15).

97.     Defendant violated NRS § 598.0923(1)(c) insofar as it prohibits the violation of a state or federal statute or regulation relating to the sale or lease of goods or services.

98.     Defendant's false representations to Plaintiff in denying his disputes concern consumer liability for unauthorized transfers, which include, among other things, false

representations that Plaintiff was not entitled to reimbursement by Defendant for unauthorized transactions and he bore responsibility for Zelle transactions he had not authorized.

99.    As a direct and proximate result of Defendant's violations of law, Defendant has failed to provide Plaintiff with reimbursements for the Unauthorized Transactions from the Account.

100.    Defendant's additional false representations to Plaintiff concern Defendant's representations in its Deposit Account Agreement.

101.    Specifically, the Deposit Account Agreement states that a consumer may initiate arbitration against Defendant and Defendant will pay all fees and costs other than the initial filing according to the consumer arbitration administrator's rules and applicable law.

102.    Plaintiff initiated the Arbitration against Defendant.

103.    However, despite indicating it would arbitrate disputes, appearing in the Arbitration, and agreeing to abide by the terms of the Arbitration, Defendant failed to pay its required fees for the administration of the Arbitration, depriving Plaintiff of a resulting Arbitration award, including but not limited to damages, statutory damages, treble damages, costs and reasonable attorneys' fees in a resulting award.

104.    Plaintiff seeks the following relief against Defendant: (a) actual damages pursuant to NRS § 41.600(3)(a), inclusive of all damages, statutory damages, treble damages, costs and reasonable attorneys' fees (including those incurred in the Arbitration and in this proceeding); (b) costs and attorney fees pursuant to NRS § 41.600(3)(c).

## COUNT 4: Breach Of Contract

105.    Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

106.    The DAA is a binding, enforceable agreement between Plaintiff and Defendant.

13

107.    Under the terms of the DAA, at Plaintiff's election, the parties were required to arbitrate Plaintiff's disputes concerning the Unauthorized Transactions.

108.    Under the terms of the DAA, Defendant agreed to abide by the terms of the arbitration as set forth by the JAMS.

109.    Plaintiff duly commenced the Arbitration with JAMS pursuant to the terms of the DAA and under the rules and terms set forth by JAMS.

110.    However, after Defendant paid the initiation fee, agreed to abide by the terms of the arbitration, and appeared by counsel, Defendant failed to pay the required fees owed to JAMS for the retention of an arbitration and thereby breached the DAA.

111.    As a result of Defendant's breach of the DAA, Plaintiff was unable to receive an award of damages in the Arbitration, including actual damages, treble damages, punitive damages, statutory damages, and costs and reasonable attorney's fees pursuant to the EFTA, conversion, and Nevada Deceptive Trade Practices claims, all of which constitute damages directly resulting from Defendant's breach.

112.    As a result of Defendant's breach of the DAA, Plaintiff will also incur the expenses of litigating his dispute in this forum, including costs and attorneys' fees, which are additional damages directly resulting damages from Defendant's breach.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff seeks judgment in his favor and damages against Defendant:

A.    awarding Plaintiff actual damages, treble damages, statutory damages, punitive damages, interest, costs, and reasonable attorneys' fees; and

B.    such other and further relief, including equitable and declaratory relief, as may be necessary, just, and proper.

14

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

Dated: April 29, 2025

> */s/Evan S. Rothfarb*
> Schlanger Law Group, LLP
> 60 East 42nd Street, 46th Floor
> New York, NY 10165
> T: 212-500-6114
> F: 646-612-7996
> E: erothfarb@consumerprotection.net
>
> *Attorneys for Plaintiff*